

# Fourth Court of Appeals
## San Antonio, Texas

## OPINION

No. 04-14-00427-CV

**IN THE INTEREST OF J.M.O.**

From the 288th Judicial District Court, Bexar County, Texas
Trial Court No. 2013-PA-01766
Honorable Charles E. Montemayor, Associate Judge Presiding

Opinion by:    Karen Angelini, Justice

Sitting:    Karen Angelini, Justice
            Rebeca C. Martinez, Justice
            Luz Elena D. Chapa, Justice

Delivered and Filed: December 10, 2014

REVERSED AND REMANDED

Appellant Joe O.[1] appeals the trial court's order terminating his parental rights to his two-year-old daughter J.M.O. In one issue, he argues he was deprived of effective assistance of counsel when his appointed attorney failed to appear at trial and failed to make arrangements for him to appear at trial. Because we agree that Joe O. was deprived of effective assistance of counsel at trial, we reverse the trial court's order of termination and remand the cause for further proceedings.

---

[1] To protect the privacy of the parties in this case, we identify the child by her initials and the parent by his first name. *See* TEX. FAM. CODE ANN. § 109.002(d) (West 2014).

**BACKGROUND**

Appellant Joe O. is incarcerated in a state-jail facility and was incarcerated on May 27, 2014, the day of the termination hearing. Trial on the merits in this case began at 9:14 a.m. Neither Joe O. nor his appointed attorney was present. Despite the absence of Joe O. and his appointed attorney, the trial judge proceeded with the trial. At the beginning of the trial, the trial judge asked the clerk of his court whether the clerk had attempted "to secure [the appointed attorney]'s participation by phone?" The clerk responded, "Yes. . . . He didn't answer. I got his voice mail and I left him a message." The trial judge noted that his "understanding [was] dad is in TDC at Dominguez. He was at the [chapter] 262 [proceeding] of 8/23/13." The trial judge explained that he "saw no extraordinary circumstances to delay any further resolution for the young child, [J.M.O.]. We are going to go forward."

The reporter's record of the trial consists of sixteen pages. Jennifer Crippen, the caseworker, was the only witness to testify. According to Crippen, J.M.O. was currently placed with her maternal great-aunt and had been living with her great-aunt since October 2, 2013. The plan was for J.M.O.'s great-aunt to adopt J.M.O. Crippen testified that Joe O. was currently incarcerated, and his release date was July 2015. His two-year sentence was the result of convictions for robbery, and "drug possession and distributing." Crippen testified that Joe O. had not had any contact with J.M.O., had refused to sign his service plan, and had not shown he had completed his service plan. Crippen testified that she did not believe Joe O. could take care of J.M.O. and that it was in J.M.O.'s best interest for her father's rights to be terminated. According to Crippen, J.M.O.'s mother was murdered, and there were "concerns" Joe O. had been involved with the murder. Based on this testimony, the trial court terminated Joe O.'s parental rights.

The next day, May 28, 2014, Joe O.'s appointed counsel filed a Motion to Reconsider Judgment, stating that (1) Joe O. was incarcerated at a state-jail facility, (2) his appointed attorney had failed to order a video conference so that Joe O. could personally participate at his trial, and (3) at approximately 8:30 a.m. on May 27, 2014, his appointed attorney had notified the trial court that appointed attorney "was in another hearing in the 436th district court and would be late." Joe O. asked that the order of termination be reconsidered and he be given a new hearing where he would have an opportunity to be heard and represented by counsel.

On June 5, 2014, the trial judge heard Joe O.'s motion to reconsider. The court-appointed attorney testified to the following:

> Basically, Your Honor, I filed this motion. The case was set on the 27 of May. I had notified the court that I had neglected to order my client to be on audio. I was in Juvenile. I let the Court know in advance that I was not going to be – that I was going to be late. The Court at about 9:15, more or less, went ahead and heard the case.

The State responded that there was no need for the trial judge to reconsider because "[t]here is nothing that's going to change the outcome or any new evidence that's going to be garnished by doing that. He's going to hold up permanency for [this child]." Joe O.'s appointed attorney responded,

> That is why I'm asking for a short–basically to reset the merits. I'm not saying that I did not know the court date, I did that, and it was my –it's strictly my fault in not notifying–you know, not ordering the client for that hearing on that date. I do think that I should have been allowed to, you know, be present in court . . . . I'm not blaming the Court for anything. I notified the Court. It was my fault and I strictly am entirely [to blame] for not notifying my client–I mean not notifying– I mean not requesting that my client be present; I'm not blaming the Court for that. The Juvenile Court, I had to go one place or the other. I notified the Court at 8:30 that I was going to be in Juvenile, so I fulfilled the requirement of notifying the court where I was going to be. I'm not blaming the Court for this case because I screwed it up, not the Court.

The trial judge denied the motion to reconsider. Joe O. now appeals, arguing that he was deprived of effective assistance of counsel at trial.

## INEFFECTIVE ASSISTANCE OF COUNSEL

In Texas, indigent persons in parental-rights termination proceedings have a statutory right to counsel. *See* TEX. FAM. CODE ANN. § 107.013(a)(1) (West 2014). The Texas Supreme Court has explained that "[i]t would seem a useless gesture on the one hand to recognize the importance of counsel in termination proceedings, as evidenced by the statutory right to appointed counsel, and, on the other hand, not require that counsel perform effectively." *In re M.S.*, 115 S.W.3d 534, 544 (Tex. 2003) (citation omitted). Thus, the Texas Supreme Court has held that the statutory right to counsel in parental-rights termination cases embodies the right to effective counsel. *Id.* And, the court concluded the standard enunciated by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984), should apply to civil parental-termination proceedings. *In re M.S.*, 115 S.W.3d at 544.

Under the *Strickland* standard, a defendant must first show that counsel's performance was deficient. *Strickland*, 466 U.S. at 687. Second, a "defendant must show that the deficient performance prejudiced the defense." *Id.* "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.*

The State argues that Joe O. has not shown his appointed attorney's decision to avoid appearing at the termination hearing was not a strategic decision or that his defense was prejudiced. In determining whether an appointed attorney's performance in a particular case is deficient, we "must take into account all of the circumstances surrounding the case, and must primarily focus on whether counsel performed in a 'reasonably effective' manner." *In re M.S.*, 115 S.W.3d at 545 (quoting *Strickland*, 466 U.S. at 687). "[C]ounsel's performance falls below acceptable levels of

performance when the representation is so grossly deficient as to render proceedings fundamentally unfair." *Id.* (citation omitted). "In this process, we must give great deference to counsel's performance, indulging a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance, including the possibility that counsel's actions are strategic." *Id.* (citation omitted). "It is only when the conduct was so outrageous that no competent attorney would have engaged in it that the challenged conduct will constitute ineffective assistance." *Id.* (citation omitted).

Recently, in *Lockwood v. Texas Department of Family & Protective Services*, No. 03-12-00062-CV, 2012 WL 2383781 (Tex. App.—Austin June 26, 2012, no pet.), the Austin Court of Appeals considered whether a parent was deprived of effective assistance of counsel when appointed counsel failed to appear at trial. The court recognized that there was a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance and that an assertion of ineffective assistance of counsel will be sustained only if the record affirmatively supports such a claim. *Id.* at \*5 (citing *Thompson v. State*, 9 S.W.3d 808, 814 (Tex. Crim. App. 1999)). It also recognized that to show prejudice, an appellant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* (quoting *Strickland*, 466 U.S. at 694). The court explained that in "this context, '[a] reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Id.* (quoting *Strickland*, 466 U.S. at 694) (alteration in original). And, the court emphasized that pursuant to *United States v. Cronic*, 466 U.S. 648, 659 (1984), "a presumption of prejudice may be warranted if an indigent parent is denied counsel at a 'critical stage' of litigation." *Lockwood*, 2012 WL 2383781, at \*5 (quoting *Cronic*, 466 U.S. at 659). "In such circumstances,

'[n]o specific showing of prejudice [is] required,' because 'the adversary process itself [is] presumptively unreliable.'" *Id.* (quoting *Cronic*, 466 U.S. at 659) (alteration in original).

The Austin Court of Appeals explained that in its case, the record reflected that appellant's attorney failed to appear at trial and that appellant, who also did not appear at trial, was not represented at trial by her appointed counsel or anyone else. *Id.* at *6. The court concluded "[t]here is no plausible strategic reason for trial counsel's failure to appear at a critical stage of litigation and subject the Department's case to appropriate adversarial testing." *Id.* Applying the principles in *Strickland* and *Cronic* to the facts of the case, the court held "that the adversarial process employed here was so unreliable that a presumption of prejudice is warranted." *Id.*

Similarly, here, the record reflects that Joe O.'s attorney did not appear at trial and that Joe O., who also was not able to appear because of his counsel's failure to make arrangements with the state-jail facility, was not represented at trial by his appointed counsel or anyone else. As in *Lockwood*, we can see no plausible strategic reason for Joe O.'s appointed trial counsel to fail to appear at such a critical stage of litigation and subject the Department's case to appropriate adversarial testing. Further, in this case, unlike in *Lockwood*, appointed counsel stated in his motion to reconsider, and at the hearing on the motion, that he was at fault for failing to appear and that he intended to appear. He was merely late for trial because he was in a different courtroom at the time trial began. Thus, we conclude Joe O. has shown his counsel's performance was deficient.

Further, we agree with the *Lockwood* court that the *Cronic* presumption should apply when appointed counsel wholly fails to appear at trial in a parental-rights termination proceeding. As in *Lockwood*, the adversarial process employed here was so unreliable that a presumption of

prejudice is warranted. Thus, because Joe O. was denied counsel at trial, which was a critical stage of litigation, we hold Joe O. has shown his defense was prejudiced.

We therefore reverse the trial court's order of termination and remand the cause for further proceedings consistent with this opinion.

Karen Angelini, Justice